## ROBERT RUFFIN v. E. T. LINDSEY.

Western Section.  March 13, 1931.

Petition for Certiorari denied by Supreme Court, July 1, 1931.

Wilson, Gates & Armstrong and Geo. Leftwich, all of Memphis, for appellee.

Sivley, Evans & McCadden, of Memphis, for appellant.

OWEN, J.  The defendant, E. T. Lindsey, has appealed from a decree rendered against him in the Chancery Court of Shelby County.  The complainant and defendant are brothers-in-law, the defendant having married the sister of complainant; they each are about fifty-three years of age and have resided in Memphis for a number of years.  The complainant, for twenty or more years was associated with W. P. Battle & Co., a firm that was engaged in the brokerage business, handling cottonseed products.  The defendant had been engaged in a like business for several years prior to 1924.  About the 1st of June, 1924, complainant withdrew from the firm of W. P. Battle & Co. and he and the defendant entered into a partnership under the name or style of Ruffin and Lindsey. · This appeal was ably argued by attorneys for both parties.  We have been furnished with splendid briefs.  Chancellor Ketchum delivered an opinion showing the nature of the controversy and as his opinion is well stated from the record, we quote from it as follows:

"This is a suit for an accounting between partners.  It is

admitted that the parties became equal partners in a brokerage and commission business under the firm name and style of Ruffin & Lindsey on June 15, 1924, and that the partnership was dissolved as of June 1, 1925. Statements showing the business done and the profits made by the business were prepared by the firm's bookkeeper, and furnished to the partners, at the time of the dissolution. It is now conceded by the complainant that these statements correctly reflect the condition of the business, so the matter of the accounting is no longer involved.

"The bill is predicated upon the theory that the parties were equal partners during the whole term of the partnership.

"The defendant contends that soon after the partnership was formed the complainant went away on a vacation of twenty-five or thirty days; that his health was not good; that after his return from his vacation he became dissatisfied with his efforts to produce business; that he frequently stated that he had made a mistake in severing his connection with another firm with which he had been associated for twenty years; that he himself was disappointed at the business produced by complainant, and that about November 20, 1924, he called on the complainant at his home and told him that he was unwilling to continue the partnership as equal partners under the existing conditions, and that he suggested a dissolution at that time; that in this conversation the complainant stated that he intended to leave again on account of his health; that they reached no understanding on this occasion, and agreed to consider the matter further at the office on the following morning; that on the following morning the complainant requested him not to dissolve the partnership at that time; that he intended to leave the city again on another vacation, and that he preferred that the business be continued in the partnership name, and that he would leave it to the defendant to say how the profits of the business should be divided.

"The defendant says that this partnership was continued upon this understanding; that in accordance therewith, in the following April, he directed the bookkeeper to charge to the commission account and credit his personal account all the profits arising from the handling of cotton seed. This amounted to $4,718.96.

"When the complainant saw this entry on the books he called upon the bookkeeper for an explanantion of it, and being informed that the entry had been made by direction of the defendant, he complained to the defendant, and was then advised that the entry had been made in accordance with their agreement made the preceding November. Complainant then denied any knowledge of any such agreement as claimed by the defendant,

denied that defendant was entitled to all the profits from the handling of cotton seed, and suggested an immediate dissolution of the partnership, which was readily agreed to by the defendant. This was about May 25th, and it was agreed that the firm should be dissolved as of June 1st.

"The real issue in the case is whether the original partnership agreement was modified, as claimed by Lindsey, in the conference of November 20th, at Ruffin's home, and at the office on the following morning. On this point there is a positive and irreconcilable conflict in the testimony of the parties. The original agreement for a partnership on an equal basis being admitted, the burden is upon the defendant to show a modification of it. He has been unable to carry this burden. Ruffin not only emphatically denies any such agreement as Lindsey asserts was made, but is corroborated by Mrs. Ruffin, who was present at the conference held at the office on the morning of November 21st, and who testified that no such modification was mentioned at that conference.

"There was much reason for the defendant, Lindsey, to be dissatisfied with the partnership agreement as originally made, and to desire a modification of it. By reason of his ill health the complainant was compelled to be absent from the business a considerable part of the time, and doubtless when he was there he was not at his best. At any rate, the summary of the business, as prepared by the bookkeeper (Ex. 1, Margaret Mc-Gaughron; Ex. 17, Lindsey), shows that of the total commissions earned ($35,276.81) the commissions on sales made by Lindsey amounted to $26,627.82, as against $8,648.99 on sales made by Ruffin. Ruffin made only two small sales of cotton seed, on which the commissions amounted to only $16.10, as against $5,945.34 on sales made by Lindsey. Taken as a whole, the earnings resulting from Lindsey's efforts in the business were more than three times those resulting from Ruffin's efforts. On the basis of results accomplished, Lindsey would justly be entitled to a substantially greater share of the profits than Ruffin, but having failed to sustain his contention that the partnership agreement was modified by mutual consent, it follows that the profits derived from the business must be equally divided, and that complainant is entitled to decree against Lindsey for $2,-359.48.

"The statement prepared by the bookkeeper at the time of the dissolution was prepared after the net profits resulting from the sale of cotton seed amounting to $4,718.96 had been charged to commission account and credited to Lindsey. This statement showed a balance due Ruffin of $2,523.22. Lindsey made pay-

ments on this amount from time to time as the debts due the partnership were collected, and sent a final check for $231.34, marked "in full settlement," in December, 1925. Ruffin declined to accept check in full settlement, and brought the present suit for the accounting, and Lindsey tendered that amount with his answer, and it is now in the hands of the Clerk and Master.

"A decree may be entered in favor of complainant and against Lindsey for $2,359.48 (or one-half of the net commissions of $4,718.96 arising from the sales of cotton seed) and the $231.34 in the hands of the Clerk and Master may be applied toward the payment of said amount.

"Interest will not be allowed. The costs will be divided."

There is a stipulation of counsel correcting the amount fixed by the Chancellor and it is agreed by and between the parties that in the event the defendant is liable to the complainant, the correct amount to be decreed against the defendant is $2860.06 and following this stipulation a decree was rendered against the defendant for $2860.06. From this decree the defendant has appealed and assigned three errors as follows:

"First. The Chancellor erred in not finding that the partners entered into a dissolution agreement, whereby the partnership affairs were composed and settled, followed by a performance of such dissolution agreement, the same constituting an accord and satisfaction of their differences, and that by the terms of such agreement appellant became obligated to pay appellee a liquidated sum in settlement of appellee's interest in the partnership, regardless of whether collection of firm assets entitled appellee to such sum; and that the tender, with appellant's answer, is the final payment on such sum.

"Second. The Chancellor erred in holding as a matter of fact that the original partnership agreement was not modified on or about November 21, 1924.

"Third. The Chancellor erred in entering a decree against appellant in the sum of $2,860.06, and one-half of the costs of the cause."

It is undisputed that the complainant and defendant entered into a partnership as equal partners about the 15th of June, 1924, and that this partnership was dissolved the latter part of May, 1925, effective June 1, 1925.

Complainant's insistence is, that he is entitled to one-half of all the profits made by said partnership during this period of about twelve months.

It is the defendant's insistence that the complainant became discouraged and was not able to produce business; that the defendant

was producing practically all of the business and that about November 20th, the complainant and defendant had a conference and an understanding in respect to a division of profits. The defendant insists that he notified complainant that defendant could not, in justice to himself and his family continue the operation of the co-partnership entirely on a basis of equal division of the profits. The defendant states that this first conference, relative to a change in the division of profits, was on the evening of November 20, 1924, at complainant's home; that the defendant and his wife were there, the complainant and his wife were at their home and another sister of the complainant and of defendant's wife, a Mrs. Sherman, was there. Following this meeting on the evening of November 20th at complainant's home we quote from defendant's answer as follows: ·

"Accordingly on the following day a conference was held at the office of the firm, being attended by complainant and his wife and defendant.

"In view of the suggestion made by defendant on the preceding evening in respect of a more equitable division of profits, and in view of defendant's notification that he would insist on a dissolution unless some new arrangement and basis was agreed upon, complainant stated that he desired to avoid a dissolution of the firm at that time and in order to do so he was willing to leave to defendant the decision as to what was to be a fair division of such profits. Complainant further notified defendant that he intended to leave Memphis again on another vacation and that he desired defendant to continue the co-partnership business during his absence. In reply to these statements of complainant defendant notified complainant that he would be willing to continue the co-partnership and avoid a dissolution, on the basis suggested by complainant, but that until such decision in respect of an equitable division of the profits was made and determined by defendant, the books and the records of the co-partnership should be kept as theretofore.

"Defendant avers that within a few days thereafter complainant did leave the City of Memphis and was absent for approximately 20 or 30 days, returning to the office of the firm on or about December 29, 1924. From that date until on or about May 20, 1925, the co-partnership continued, but throughout said period of time complainant failed to give to the business his entire time and attention, and in comparison with the business produced by defendant that produced and brought about by the efforts of complainant was small.

"Complainant avers that on or about April 30, 1925, in furtherance of the understanding had at the time dissolution was avoided, defendant instructed the bookkeeper of the firm

to credit to defendant's personal account all commissions on sales of cottonseed, and debit the same to the firm's 'Commission Account.' This direction was given by defendant for several reasons, among others being, that it was what defendant considered an equitable division of the profits, and consistent and in accordance with the understanding had with complainant at the conference in November, 1924, without which agreement and understanding defendant would not have continued in business as a partner of complainant, because each and every sale of cottonseed was produced and concluded individually and directly by defendant; because at the formation of the co-partnership it was not contemplated that the firm would deal in cottonseed, but on the converse, that its activities would be limited to cottonseed products and cottonseed oil; because complainant had not effected a single sale of cottonseed, and for these reasons defendant considered that such an entry as made by the bookkeeper pursuant to defendant's instructions constituted a fair and equitable division of the profits.''

The defendant also insisted that he and the complainant had a settlement of their business affairs early in May of 1925, and it was after the cross entry had been made crediting the defendant with all the profits made on cottonseed. The defendant, in his answer, insists that the complainant acquiesced in this settlement and we quote from his answer as follows:

''Accordingly, the parties instructed the bookkeeper to prepare and furnish to each of them a statement of the books showing the respective accounts of the parties and the sums of money due to each. Thereafter, the bookkeeper did prepare statements, furnishing one to each of the parties. Said statements reflected that there was a net balance of five thousand seven hundred twenty-three and 22/100 dollars due and owing to complainant. Said statements further reflected that said balance owing to complainant was the amount due him after the cross entry aforesaid, whereby the profits on cottonseed were credited to defendant's individual account. Upon the receipt of said statements by each of the parties, it was by them understood and agreed that the said amount due to complainant would be paid to him by defendant, as the latter desired to continue the business, he assuming all responsibility for sums of money due firm creditors, the lease obligation, and all other liabilities of the firm. It was further agreed and understood that said sum would not be paid by defendant to complainant at that time, but would be made in different payments as fast as outstanding accounts could be collected by defendant and paid from such sources.

''With this understanding and agreement complainant severed his relation as a co-partner with defendant and the firm was dissolved.

''Defendant avers that so far as he has been enabled he has in every respect complied with said agreement of dissolution. Defendant avers that in accordance with said agreement he assumed and discharged the liabilities of the firm for which complainant was jointly liable with defendant. Defendant further avers that as and when he collected accounts due the firm he made payments to complainant in accordance with the agreement and understanding at the time of dissolution. Defendant further avers that in pursuance of said agreement so made between the parties, defendant paid to complainant all of the said sum due complainant save and except a small balance of two hundred thirty-one and 34/100 ($231.34) dollars, and this balance due complainant has been reduced by defendant, even though defendant has not yet collected all of the accounts outstanding and due the firm at the time of the dissolution.''

Thus it will be seen that the defendant interposes two defenses to complainant's bill. The first is, that the original partnership agreement was modified by consent on November 21, 1924, whereby complainant agreed with defendant that he would leave the division of profits to the judgment of the defendant and abide by any decision that the defendant should make.

The defendant states in his testimony that he would have had the right, under this agreement as to the modification, to have allowed the complainant 25%; 20%; 10% or whatever amount he saw fit to fix; that he thought it just and equitable to take credit for all the profits made in handling cotton seed but he did not reach this agreement to take the profits arising from the handling of cotton seed until April, 1925, some five months after the conference of November 21, 1924.

The complainant testified that when he discovered the cross entry, and the defendant had instructed the bookkeeper to credit the defendant with all profits arising from the handling of cotton seed that the defendant insisted that he did this because the handling of cotton seed was an individual matter and that Ruffin & Lindsey were not entitled to participate in the handling of cotton seed.

As to the first defense interposed, the burden of proof would be on the defendant to establish a modification of the contract. This modification, as contended by the defendant would be an unusual one; one in which the contention is made by the defendant that his partner, a business man, simply left it to his partner to take whatever profits the defendant partner, Lindsey, would see fit and proper and the defendant waited five months until he could reach a decision

as to what would be a proper division and then decided that he would take all the profits made in handling cotton seed.

Both of these parties are shrewd, practical business men; they both stand before the Court equal as to character and integrity.

In our opinion, the defendant has failed to show by a preponderance of the evidence that the contract was ever modified or changed in any form or manner from the original contract of equal partnership.

The second insistence by the defendant is as follows:

In dissolving the partnership appellant became bound to pay to appellee a liquidated sum of money, regardless of whether collections of outstanding firm accounts would entitle appellee to such agreed sum. The Chancellor neither considers nor determines this point.

It is the appellant's contention that the complainant acquiesced in and ratified the settlement that was made the latter part of May and by so doing appellant's plea of accord and satisfaction should be sustained and that the complainant is estopped from a recovery against the defendant or in the least by the complainant accepting checks from the defendant and in not replying promptly to defendant's letters.

Thus defendant is corroborated as to the modification of the partnership contract.

We are of the opinion that we would have to find and hold that there had been a modification of the contract before we could look to the defendant's second proposition. We do not find by the conduct of the complainant, any evidence of corroboration of defendant's theory and insistence that the contract of partnership had been modified. It is true that the defendant agreed to charge himself with the accounts receivable and give the complainant credit for the amount reflected by the books as due but uncollected; this was a voluntary agreement on the part of the defendant and if he could succeed in having the contract modified, then he could well afford to charge himself with the small amounts due the firm.

The defendant has failed to carry the burden of proof to sustain either one of his contentions.

It results that the assignments of error are overruled and disallowed. The judgment of the lower court is affirmed. The complainant will recover of the defendant and his sureties on appeal bond the amount of the judgment rendered in the lower court with interest thereon from its rendition and the costs adjudged against the defendant in the lower court and the costs of this appeal for which execution will issue.

Heiskell and Senter, JJ., concur.